DUNCAN, J.
In this criminal case, defendant was charged with multiple offenses in a single indictment. Defendant demurred to the indictment on the ground that it did not allege the basis for joining the charges. The trial court disallowed the demurrer, the case proceeded to a jury trial, and defendant was convicted. Defendant appealed, and the Court of Appeals held that an indictment that charges a defendant with more than one offense must allege the basis for joining the charges, but that any error in the indictment in this case was harmless. State v. Warren , 287 Or. App. 159, 399 P.3d 1060 (2017). For the reasons explained below, we affirm.
I. FACTS
The relevant facts are procedural. A grand jury issued an indictment charging defendant with seven offenses. Specifically, the indictment charged defendant with two counts of unlawfully obtaining public assistance, in violation of ORS 411.630 (Counts 1 and 2); one count of unlawfully obtaining food stamps, in violation of ORS 411.840 (Count 3); one count of theft in the first degree, in violation of ORS 164.055 (Count 4); and three counts of unsworn falsification, in violation of ORS 162.085 (Counts 5, 6, and 7). The indictment alleged that some of the offenses were committed during date ranges and others were committed on specific dates. The date ranges and dates overlapped and spanned eleven months. The indictment did not allege that the offenses were related in any of the three ways required by the joinder statute, ORS 132.560. That is, it did not allege that they were "[o]f the same or similar character," "[b]ased on the same act or transaction," or "[b]ased on two or more acts or transactions connected together or constituting parts of a common scheme or plan." ORS 132.560(1)(b).[1]
*1039 Defendant filed a demurrer to the indictment, pursuant to ORS 135.630(2), which authorizes a defendant to demur to an indictment on the ground that "it does not substantially conform to the requirements" of certain statutes, including the joinder statute, ORS 132.560. In his demurrer, defendant asserted that the indictment violated the joinder statute because it failed to allege the basis for joinder of the charges. Specifically, defendant asserted, "[T]he indictment merely lists each offense using the words of the statute without stating that the various charges are sufficiently similar or connected. Thus, the indictment on its face fails to meet the joinder requirements of ORS 132.560(1)(b)."
The trial court held a hearing on defendant's demurrer, during which the state asserted that the indictment alleged the basis for joinder. According to the state,
"going strictly from the four corners of the document, it's obvious that * * * all seven counts are involved with using some false or fraudulent methodology to obtain benefits. * * * [B]ased on that alone, the seven acts are enough of a same or similar character to allow for joinder."
The trial court disallowed the demurrer. See ORS 135.660 ("Upon considering the demurrer, the court shall give judgment, either allowing or disallowing it, and an entry to that effect shall be made in the register.")
Defendant did not make any other challenges to the joinder of the charges. He did not assert that the evidence, as it became known to him through discovery and trial, was insufficient to support joinder. And he did not assert that, even if the evidence was sufficient, joinder resulted in substantial prejudice. He did not move to sever the charges or to have the state elect between them.
At trial, the state presented evidence that, after defendant was terminated from his position as a Beaverton police officer in January 2011, he applied for food stamp benefits, which he then received through December 2011. During that time period, defendant moved to Washington, but he did not inform the benefits agency of the move and, after the move, he completed two benefits forms on which he listed an Oregon address as his residence. In October 2011, defendant was reinstated to his police officer position and received back pay, but did not report the back pay to the benefits agency. After being reinstated, defendant completed an "affidavit of marriage or domestic partnership," listing his girlfriend as a co-beneficiary of his employment benefits. In the affidavit, defendant stated that he was not married, which was false, because he was still married to his estranged wife.
The jury found defendant not guilty of two of the unsworn falsification counts (Counts 5 and 6), which were based on his listing the Oregon address as his residence on the two benefits forms, and guilty of the remaining five counts (Counts 1-4 and 7).
Defendant appealed, assigning error to the trial court's disallowance of his demurrer. In support of that assignment, he relied on the Court of Appeals' decision in State v. Poston , 277 Or. App. 137, 370 P.3d 904 (2016) ( Poston I ), adh'd to on recons , 285 Or. App. 750, 399 P.3d 488 ( Poston II ), rev. den. , 361 Or. 886, 403 P.3d 761 (2017), which was issued after his trial.
In Poston I , the Court of Appeals ruled that the state is "required to allege in the charging instrument the basis for the joinder of the crimes that are charged in it, whether by alleging the basis for joinder in the language of the joinder statute or by alleging facts sufficient to establish compliance with the joinder statute." Poston I, 277 Or. App. at 144-45, 370 P.3d 904. Because the indictment in Poston I did not comply with that requirement, the Court of Appeals held that the trial court had erred by disallowing the defendant's demurrer to the indictment.
*1040 Id. at 145, 370 P.3d 904. The Court of Appeals then considered whether the error required reversal. In doing so, it applied Article VII (Amended), section 3, of the Oregon Constitution, which provides that an appellate court shall affirm a trial court's judgment, notwithstanding any error committed during the trial, if the appellate court is of the opinion that the judgment "was such as should have been rendered." To determine whether the error was "harmless" for the purposes of Article VII (Amended), section 3, the Court of Appeals focused on the effect of the joinder on the jury's verdict. Poston I , 277 Or. App. at 145-46, 370 P.3d 904 ; see State v. Davis , 336 Or. 19, 33, 77 P.3d 1111 (2003) (holding that evidentiary error is harmless for the purposes of Article VII (Amended), section 3, if "there is little likelihood that the error affected the verdict"). The Court of Appeals ruled that "whether improper joinder of charges affected the verdict depends on whether joinder led to the admission of evidence that would not have been admissible but for the joinder * * * and, if so, whether that evidence affected the verdict on those charges." Poston I , 277 Or. App. at 145, 370 P.3d 904.[2]
Thus, in Poston I , the Court of Appeals ruled that an indictment that charges multiple offenses must allege the basis for joinder, and, if an indictment fails to do so and a defendant demurs to the indictment based on that failure, it is error for the trial court to disallow the demurrer. The Court of Appeals also ruled that Article VII (Amended), section 3, applies to the erroneous disallowance of a demurrer based on the failure to allege the basis for joinder, and, therefore, the erroneous disallowance of such a demurrer will not result in reversal if it is harmless, and whether it is harmless depends on whether evidence admitted when the charges were tried together would not have been admitted if the charges had been tried separately and, if so, whether that evidence affected the verdicts.
In this case, defendant relied on Poston I to argue that the trial court erred by disallowing his demurrer to the indictment, which, as described above, charged him with two counts of unlawfully obtaining public assistance, one count of unlawfully obtaining food stamps, one count of first-degree theft, and three counts of unsworn falsification, committed over a period of eleven months. Defendant argued that, like the indictment in Poston I , the indictment did not allege the basis for joining the charges and, therefore, the trial court erred by disallowing his demurrer. Defendant further argued that the error was not harmless.
Applying Poston I , the Court of Appeals held that the allegations in the indictment were sufficient to support joinder of some of the charges. Warren , 287 Or. App. at 163, 399 P.3d 1060. Specifically, the Court of Appeals held that "the facts alleged in the indictment for the charges of unlawfully obtaining public benefits, and the charge of unsworn falsification * * * establish that they are of 'the same or similar character.' " Id. But the Court of Appeals did not determine whether the allegations in the indictment were sufficient to establish that the first-degree theft charge was "of the same or similar character" as the other charges. Id.
*1041 Instead, the Court of Appeals assumed, without deciding, that the allegations were insufficient in that regard and, therefore, the trial court had erred in disallowing defendant's demurrer. Having made that assumption, the Court of Appeals turned to the question of whether the assumed error was harmless, explaining that, under Poston I , that question required it "to examine the erroneously joined charges as if they had been tried separately and determine whether '[a]ll of the evidence that was presented at defendant's trial would have been admissible.' " Warren , 287 Or. App. at 164, 399 P.3d 1060 (quoting Poston I , 277 Or. App. at 146, 370 P.3d 904 ). The Court of Appeals further explained,
" 'Poston demonstrates that evidence presented at trial on erroneously joined charges would be "admissible," as we used that term in Poston , in a hypothetical trial on each charge or properly joined group of charges, only when (1) each item of evidence that was actually presented could have been admitted in the hypothetical trial under a legally correct evidentiary analysis and (2) it is implausible that, had the defendant objected under OEC 403 or raised some other objection invoking the trial court's discretion, the trial court would have excluded that evidence in the hypothetical trial.' "
Id. (quoting State v. Clardy , 286 Or. App. 745, 772-73, 401 P.3d 1188 (2017) ). Applying that test in this case, the Court of Appeals held that any error in joining the first-degree theft charge with the other charges was harmless because all the evidence that was admitted in defendant's trial would have been "admissible," as that term was used in Poston I , in separate trials, if the first-degree theft charge had not been joined with the other charges. Id.
On defendant's petition, we allowed review to determine whether, as the Court of Appeals held in Poston I , an indictment that charges more than one offense must allege the basis for joinder of the offenses and, if so, whether the erroneous disallowance of a demurrer for failure to allege the basis for joinder is subject to the harmless error test established in Poston I .
II. ANALYSIS
A. Whether an Indictment Must Allege the Basis for Joinder of Charges
We begin with the question of whether an indictment that charges more than one offense must allege the basis for joining the charges. As framed by the parties, that is a question of statutory interpretation. Defendant argues that the joinder statute, ORS 132.560, requires that an indictment allege the basis for joining charges; the state argues that it does not.
Two statutes are relevant to whether an indictment must allege the basis for joining charges: the joinder statute, ORS 132.560, which governs the number of offenses that can be charged in a single indictment, and the demurrer statute, ORS 135.630, which governs the grounds for demurrers and cross-references the joinder statute. The statutes are related and provide context for each other. See PGE v. Bureau of Labor and Industries , 317 Or. 606, 611, 859 P.2d 1143 (1993) (stating that the context of a statute includes related statutes); see also State v. Norton , 9 Or. App. 595, 598, 497 P.2d 680 (1972) (explaining that the joinder and demurrer statutes "must be read in conjunction" with each other).
We begin with the text of the joinder statute, ORS 132.560. See PGE , 317 Or. at 610, 859 P.2d 1143 (stating that the text of a statute is "the starting point for interpretation"). It provides, in pertinent part, that a charging instrument must charge only one offense, unless the charges are related in one of three ways:
"(1) A charging instrument must charge but one offense, and in one form only, except that :
"(a) Where the offense may be committed by the use of different means, the charging instrument may allege the means in the alternative.
"(b) Two or more offenses may be charged in the same charging instrument in a separate count for each offense if the offenses charged are alleged to have been committed by the same person or persons and are :
*1042 "(A) Of the same or similar character;
"(B) Based on the same act or transaction; or
"(C) Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
"(2) If two or more charging instruments are found in circumstances described in subsection (1)(b) of this section, the court may order them to be consolidated.
"(3) If it appears, upon motion, that the state or defendant is substantially prejudiced by a joinder of offenses under subsection (1) or (2) of this section, the court may order an election or separate trials of counts or provide whatever other relief justice requires."
(Emphases added.)
By its terms, the joinder statute relates to "charging instrument[s]." ORS 132.560(1). It creates a general rule that a charging instrument must not charge more than one offense. That general rule is subject to three exceptions: a charging instrument may charge more than one offense if, and only if, the offenses are "[o]f the same or similar character," "[b]ased on the same act or transaction," or "[b]ased on two or more acts or transactions connected together or constituting parts of a common scheme or plan." ORS 132.560 (1)(b)(A)-(C).
The demurrer statute, ORS 135.630, authorizes a defendant to demur to a charging instrument. A demurrer is a challenge to the charging instrument itself. See State v. Pinnell , 319 Or. 438, 444, 877 P.2d 635 (1994). It must be resolved based on the face of the charging instrument. See id. When ruling on a demurrer, a trial court cannot consider facts other than those alleged in the charging instrument. See id. The grounds for a demurrer are limited and are specified in the demurrer statute. ORS 135.630 (identifying six bases for demurrers). As relevant here, the demurrer statute provides:
"The defendant may demur to the accusatory instrument when it appears upon the face thereof:
" * * * * *
"(2) If the accusatory instrument is an indictment, that it does not substantially conform to the requirements of ORS 132.510 to 132.560 , 135.713, 135.715, 135.717 to 135.737, 135.740 and 135.743 [.]"
ORS 135.630 (emphasis added). Thus, the demurrer statute authorizes a defendant to demur to an indictment for non-compliance with the requirements of certain statutes, including the joinder statute.
Read together, the joinder and demurrer statutes establish a pleading requirement and a means for enforcing that requirement. The joinder statute requires that an indictment charge only one offense, unless an exception applies. The demurrer statute provides that a defendant can challenge non-compliance with that requirement through a demurrer. Because a demurrer must be resolved on the face of the pleading, the fact that the legislature has provided that a defendant can demur to an indictment on the ground that it does not comply with the joinder statute indicates that the legislature intended that a trial court would be able to determine, from the face of an indictment, whether the indictment complies with the joinder statute, because it either alleges only one offense or alleges more than one offense and an exception. See Poston I , 277 Or. App. at 143, 370 P.3d 904 (holding that the fact that a defendant may demur to an indictment on the ground that it does not comply with ORS 132.560 supports the conclusion that "a charging instrument must show on its face that the requirements of ORS 132.560have been met ") (emphasis in original).
That interpretation of the joinder and demurrer statutes is consistent with their history and the case law interpreting them, which, as discussed below, shows that, for more than one hundred years, Oregon law has limited the number of offenses that can be charged in a single charging instrument and has required that charging instruments allege facts sufficient to demonstrate compliance with those limits.
As a general rule, under Oregon law, a charging instrument may charge only one offense. ORS 132.560(1). The purpose of the general rule is simple: it serves to protect defendants from the prejudice that can result *1043 from trying multiple, unrelated offenses at one time. State v. Cook , 242 Or. 509, 521, 411 P.2d 78 (1966) (stating that the statute that limits joinder of charges is intended to prevent prejudice at trial caused by commingling of charges); see State v. Boyd , 271 Or. 558, 569, 533 P.2d 795 (1975) (noting that a defendant has a right "to face a trier of fact unprejudiced by damning evidence of extraneous transactions"). Just as the admission of evidence of other crimes can be unfairly prejudicial when a defendant is charged with a single crime, the joinder of charges for multiple crimes can be unfairly prejudicial. State v. Brown , 299 Or. 143, 151, 699 P.2d 1122 (1985) (stating that evidence of other crimes "usually is very prejudicial to the defendant because such a fact is often interpreted by the jury as evidence of bad criminal character").
The general rule that a charging instrument may charge only one offense dates back to before Oregon was a state. Statutes of Oregon 1854, Act to Define Crimes and Misdemeanors, and Regulate Criminal Proceedings , p. 184. In 1853, the legislative assembly of the Oregon Territory enacted an act concerning criminal law. The act included a section governing the number of offenses that could be charged in an indictment. Id . at ch. XXI, § 7, p. 231. That section provided, "The indictment shall charge but one offence, and in one form only, except that where the offence may be committed by the use of different means, the indictment may allege the means in the alternative." Id .
The territorial law-including the limit on the number of offenses that an indictment could charge-continued in effect after Oregon became a state. Or. Const, Art XVIII, § 7 (providing for the continuation of laws in effect in the Oregon Territory).[3] The limit on the number of offenses that an indictment could charge was initially codified as a state statute in the Deady Code. General Laws of Oregon, Crim Code, ch. VIII, § 74, p. 454 (Deady 1845-1864). Under that statute, a charging instrument could not charge more than one offense under any circumstances. But it could allege multiple acts if the acts constituted a single offense.
In order to enforce the limit on the number of offenses charged in a single indictment, the territorial law provided that a defendant could demur to an indictment if it charged more than one offense. Statutes of Oregon 1854, Act to Define Crimes and Misdemeanors, and Regulate Criminal Proceedings , ch. XXIV, § 3, p. 237. That provision also became state law and was initially codified as a state statute in the Deady Code. General Laws of Oregon, Crim Code, ch. XI, § 123, p. 461-62 (Deady 1845-1864).[4] Under that statute, defendants demurred to indictments-all of which were single-count indictments-on the ground that they alleged multiple *1044 acts that did not constitute a single offense. Courts reviewed those demurrers to determine whether the allegations in the indictment charged only one offense. It had to be clear from the face of the indictment that the indictment charged only one offense; if it was not, the demurrer had to be allowed. On that point, State v. Clark , 46 Or. 140, 80 P. 101 (1905), is illustrative.
In Clark , the defendant was charged with stealing three horses, one belonging to one person and the other two belonging to a second person. The defendant demurred to the indictment on the ground that it improperly charged more than one offense because the horses belonged to different persons. The trial court disallowed the demurrer. This court affirmed, explaining that "the stealing of articles belonging to two or more persons at the same time and place constitutes but one offense, and may so be charged in an indictment." 46 Or. at 141-42, 80 P. 101. But, this court emphasized that the basis for alleging the multiple larcenies had to appear on the face of the indictment. Id. at 142, 80 P. 101. Specifically, this court ruled, "It must be alleged * * * that the larcenies were committed at the same time and place. There is no presumption that, because they are charged to have been committed on the same day and in the same county, they constitute a single crime." Id. Thus, in Clark , the disallowance of the defendant's demurrer was proper only because the indictment alleged that "the defendants did at the time and place specified, and as one transaction , commit the several acts charged." Id. (emphasis added). See also State v. Laundy , 103 Or. 443, 468, 206 P. 290 (1922) (affirming trial court's disallowance of a demurrer to an indictment that alleged multiple violations of the criminal syndicalism statute because the indictment alleged that the violations were committed at the same time and place and constituted a single transaction ).
In 1933, the legislature amended the statute governing the number of offenses that could be charged in a single indictment by providing that charges for "the same act or transaction" could be joined for indictment and trial. Or. Laws 1933, ch. 40, § 1. As amended, the statute provided:
"[W]hen there are several charges against any person, or persons, for the same act or transaction instead of having several indictments, the whole may be joined in one indictment in several counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."
OCLA § 26-711 (1940), recodified at ORS 132.560 (1953), amended by Or. Laws 1989, ch. 842, § 1, amended by Or. Laws 1993, ch. 278, § 1. Thus, under the statute, an indictment could charge a defendant with multiple offenses if, and only if, the offenses were part of the same act or transaction.
As before, a defendant could demur to an indictment on the ground that it charged more offenses than allowed by statute. Oregon Code, title XIII, ch. VIII, § 13-831 (1930), codified at ORS 135.630 (1953). Also as before, when ruling on those demurrers, trial courts had to determine whether the allegations in the indictment were sufficient to establish that the indictment did not charge more offenses than allowed by statute. To be sufficient, the allegations had to include the basis for joinder of the offenses. That is, they had to include an allegation that the offenses were committed as part of the same act or transaction. Accordingly, this court held that indictments charging more than one offense were proper if they alleged that the offenses were part of the same act or transaction. E.g. , State v. Fitzgerald , 267 Or. 266, 273, 516 P.2d 1280 (1973) ; State v. Stuart , 250 Or. 303, 308, 442 P.2d 231 (1968) ; State v. Tracy , 246 Or. 349, 354-55, 425 P.2d 171 (1967) ; State v. Huennekens , 245 Or. 150, 154, 420 P.2d 384 (1966). The Court of Appeals did the same. E.g. , Norton , 9 Or. App. at 598, 497 P.2d 680.
In Huennekens , the defendant demurred to an indictment that charged him with one count of rape and one count of sodomy. The indictment expressly alleged that the defendant committed the sodomy "as a part of the same act and transaction" as the rape. 245 Or. at 151, 420 P.2d 384. On review, this court held that the demurrer should have been overruled and, in doing so, this court relied on the fact that the indictment identified *1045 the basis for joinder by using the language of the joinder statute:
"The indictment, in the instant case, charges in the language of the statute, that the sodomy occurred as a part of the same act and transaction as the rape. We have repeatedly held that an indictment in the language of a statute is good against a demurrer. Since it does not appear on the face of the indictment that the two crimes charged could not be a part of the same transaction, the demurrer must be overruled."
Id. at 154, 420 P.2d 384 (internal citation omitted).[5] Thus, Huennekens indicates that, in order for an indictment to survive a demurrer based on improper joinder, two requirements must be met: (1) the indictment must allege the basis for joinder, and (2) that basis must be possible, given the offenses and facts alleged.
Following Huennekens , this court applied those two requirements when reviewing trial court rulings on demurrers based on improper joinder. For example, in Tracy , this court held that the defendant's demurrer to an indictment charging him with one count of rape and one count of assault was properly overruled where (1) the indictment expressly alleged that the assault was committed as part of the same act or transaction as the rape, and (2) it did not appear on the face of the indictment that the two crimes could not have been committed as part of the same act or transaction. 246 Or. at 354-55, 425 P.2d 171.
In Fitzgerald , this court made it even more clear that an indictment must allege the basis for joining charges. In that case, the defendant was charged in a single indictment with one count of escape and one count of unauthorized use of a vehicle. The indictment expressly alleged that the defendant had committed the unauthorized use of a vehicle "[a]s part of the same transaction" as the escape. 267 Or. at 269, 516 P.2d 1280. The defendant demurred to the indictment, and the trial court overruled the demurrer. On review, this court affirmed the overruling of the demurrer because the indictment alleged the basis for joinder. Specifically, this court held, "In view of the allegation in the indictment that the unauthorized use of the vehicle was a part of the same transaction as the escape , we think the trial judge properly overruled the demurrer." Id. at 273, 516 P.2d 1280 (emphasis added).
Like this court, when reviewing rulings on demurrers based on improper joinder, the Court of Appeals has focused on whether the indictment alleged the basis for joinder and whether that basis was possible, given the offenses and facts alleged. For example, in Norton , the Court of Appeals held that the trial court should have overruled the defendant's demurrer to the indictment because it alleged the basis for joinder and that basis was possible, given the offenses and facts alleged. 9 Or. App. at 598, 497 P.2d 680. Specifically, the court held, "Inasmuch as the indictment alleges that both counts arose out of the same transaction and the acts alleged in each count could in fact have been committed as part of the same transaction, we hold that the indictment was good as against defendant's demurrer." Id. (emphasis added).
Notably, in Huennekens , Tracy , and Fitzgerald , this court reviewed the trial court's rulings on demurrers to determine whether the indictment alleged a valid basis for charging more than one offense. This court would not have done so if-as the concurrence concludes in this case-an indictment is not required to allege the basis for charging more than one offense. But it did so, because an indictment is required to provide a defendant notice of the basis for charging more than one offense, as this court indicated in Stuart . In Stuart , the trial court overruled the defendant's demurrer to a two-count indictment and this court affirmed, explaining:
"The indictment is not a model pleading, but it advises the defendant that he is charged with two related offenses arising out of the same unlawful transaction : (1) felonious conversion of an automobile by a *1046 bailee thereof; and (2) wrongful possession of an automobile known by the possessor to have been obtained by criminal means within the commonly understood meaning of the word 'stolen.' Accordingly , the indictment was good against the demurrer, and the demurrer should have been overruled."
250 Or. at 308, 442 P.2d 231 (emphases added; internal citation omitted). Thus, under Stuart , when an indictment charges a defendant with more than one offense, the indictment must provide notice to the defendant of the basis for doing so. Notice to the defendant is important. It is necessary for the defendant to make an informed decision about whether to demur to the indictment on the ground that the allegations are insufficient to support joinder and, later, to make an informed decision about whether to move to sever on the ground that the evidence is insufficient to support joinder. It is also necessary for the trial court to make informed rulings on such demurrers and motions.
It is not difficult for the state to allege the basis for joinder. As this court indicated in Huennekens , it usually is sufficient for the state to allege the basis for joinder by using the language of the joinder statute. 245 Or. at 154, 420 P.2d 384. In addition, it is both logical and practical for the state to identify the basis for joinder. Given that the general rule is that an indictment must charge only one offense, when the state seeks to rely on an exception to that rule, it should identify the exception. If the state is not required to identify the exception, defendants will have to guess the state's basis for joinder.[6] It is unlikely that the legislature intended to require defendants to be forced to play such an unnecessary guessing game, which could lead to delays and inefficient proceedings.[7]
To summarize, the text of the joinder statute, ORS 132.560, indicates that the statute creates a pleading requirement, specifically, a requirement that a charging instrument charge only one offense, unless one of three exceptions apply. The context of the joinder statute includes related statutes, and the demurrer statute, ORS 135.630, is one such statute. The demurrer statute authorizes a defendant to demur to an indictment for non-compliance with several statutes, including the joinder statute. For the legislature's authorization of the demurrer to have full effect, an indictment that charges more than one offense must allege the basis for doing so. And this court's cases have long recognized that requirement. They have reviewed trial court rulings on demurrers to *1047 determine if the allegations in the indictment were sufficient to support joinder, and they have held that the allegations were sufficient if (1) they alleged the basis for joinder, and (2) that basis was possible, given the offenses and facts alleged. Thus, the joinder and demurrer statutes, considered together as they must be, and this court's cases involving those statutes support the conclusion that, if an indictment charges more than one offense, it must allege the basis for joining the charges.
That conclusion is also consistent with this court's case law establishing that whether offenses have been properly joined in a single indictment is an issue that can be litigated at different points in a case. First, it can be litigated through a demurrer. The issue at the demurrer stage is whether the allegations in the indictment are sufficient to support joinder, and the demurrer must be decided based solely on the face of the indictment. If the allegations are sufficient, the demurrer must be disallowed. Then, the issue becomes whether the evidence, as revealed through discovery and trial, is sufficient to support joinder, which can be litigated through, for example, a motion to sever or a motion to elect.
Fitzgerald illustrates that a defendant can challenge improper joinder through a demurrer, based on the allegations in the indictment, and a later motion, based on the evidence. As described above, in Fitzgerald , the defendant was charged in a single indictment with one count of escape and one count of unauthorized use of a vehicle. He demurred to the indictment on the ground that the charges were improperly joined, and the trial court overruled the demurrer. In addition to demurring to the indictment, the defendant challenged the joinder of the two offenses by filing a pretrial motion for a mistrial and, in the alternative, a motion for the state to elect between the two counts. The trial court denied those motions, and the state tried the two counts together to a jury. After the state rested its case, the defendant renewed his motion for a mistrial. The trial court denied that motion as well. Fitzgerald , 267 Or. at 270, 516 P.2d 1280.
On review, the defendant assigned error to the "overruling of the demurrer and the overruling of the motion to elect and the motions for a mistrial." Fitzgerald , 267 Or. at 270, 516 P.2d 1280. As already described, this court held that the indictment was good against the defendant's demurrer because it alleged that the unauthorized use of the vehicle was part of the same transaction as the escape. Id. at 273, 516 P.2d 1280. In addition, regarding the defendant's other motions, this court held that the trial court had erred "in not requiring the state to elect when it became apparent that the two offenses were not part of the same transaction." Id. Thus, as Fitzgerald shows, a defendant can challenge the joinder of offenses if either the allegations in the indictment or the evidence as it becomes known is insufficient to support joinder.
But, under the concurrence's opinion, a defendant would not be able to demur to an indictment-as the defendants in Huennekens , Tracy , and Fitzgerald did-on the ground that the allegations in the indictment are not sufficient to support joinder of the charges because, in the concurrence's view, an indictment is not required to include any such allegations.
The concurrence bases its holding on the language of the joinder statute as amended in 1989. Prior to the amendment, the joinder statute provided, as it had since 1933, that charges "against any person or persons" could be joined in an indictment if the charges were for "the same act or transaction" and that, if two or more indictments charged offenses for the same act or transaction, a court could order that the indictments be consolidated. ORS 132.560(2) (1987). The 1989 amendment added two additional bases for jurisdiction: if the offenses were "[o]f the same or similar character" or "[b]ased on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Or. Laws 1989, ch. 842, § 1. With additions in bold and deletions in brackets and italics, the 1989 amendment modified the statute to read as follows:
"(1) The indictment must charge but one crime, and in one form only, except that:
*1048 "[ (1) ] (a) Where the crime may be committed by the use of different means, the indictment may allege the means in the alternative.
"[ (2) When there are several charges against any person or persons for the same act or transaction, instead of having several indictments, the whole may be joined in one indictment in several counts; and if two or more indictments are found in such cases, the court may order them to be consolidated. ]
"(b) Two or more offenses may be charged in the same accusatory instrument in a separate count for each offense if the offenses charged, whether felony or misdemeanor or both, are alleged to have been committed by the same person or persons and are:
"(A) Of the same or similar character;
"(B) Based on the same act or transaction; or
"(C) Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
"(2) If two or more indictments are found in circumstances described in paragraph (b) of subsection (1) of this section, the court may order them to be consolidated.
"(3) If it appears, upon motion, that the state or defendant is prejudiced by a joinder of offenses under subsection (1) or (2) of this section, the court may order an election or separate trials of counts or provide whatever other relief justice requires. "
Id.[8]
The concurrence focuses on the fact that, as amended in 1989, the joinder statute provides that offenses "may be charged in the same accusatory instrument in a separate count for each offense if the offenses charged * * * are alleged to have been committed by the same person or persons and are * * * [o]f the same or similar character; [b]ased on the same act or transaction; or [b]ased on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Id. (emphasis added). Based on the statute's use of the words "are alleged" and "are," the concurrence concludes that an indictment that charges more than one offense is required to allege that the offenses were committed by the same person or persons, but is not required to allege that the offenses are related in one of the three ways required for joinder. 364 Or. at 135-37, 430 P.3d at 1053-55 (Flynn, J., concurring).
The concurrence's reading of the text is plausible, but it is also plausible that the legislature did not intend the amendment to alter the long-established requirement that an indictment that charges more than one offense must allege the basis for joining the charges. The legislative history of the 1989 amendment supports the second view.
The purpose of the 1989 amendment was to expand the bases for joinder, so that charges could be joined not only if they were "based on the same act or transaction," as the law already allowed, but also if they were "of the same or similar character" or "based on two or more transactions connected together or constituting parts of a common scheme or plan." The amendment was based on Federal Rule of Criminal Procedure (FRCrP) 8 (1989), as primary proponents of the amendment and others repeatedly stated. See, e.g. , Tape Recording, House Judiciary Subcommittee on Crime and Corrections, HB 2251, Jan. 13, 1989, Tape 1, Side B) (statement of Marion County District Attorney Dale Penn).[9] The federal rule provided:
*1049 "(a) Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan .
"(b) Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses . Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."
FRCrP 8 (1989) (emphasis added). It appears that the amendment imported text from both FRCrP 8(a) and 8(b). But it does not appear that the amendment was intended to do more than add the two additional bases for joinder to Oregon law. Indeed, one of the proponents of the amendment told the legislature that the language of the amendment "looks pretty much the same as Oregon law now." Tape Recording, House Judiciary Subcommittee on Crime and Corrections, HB 2251, Jan. 13, 1989, Tape 1, Side B (statement of Dale Penn). And, as the state acknowledges in its brief in this court, the legislative history of the amendment "shows that the legislature intended to adopt the substantive portion of the federal rules insofar as federal law had expanded the scope of what offenses may [be] joined in a single indictment." (Emphasis in original.) Nothing in the legislative history indicates that the legislature intended to alter Oregon's long-established pleading requirement. And, notably, the legislature left in place the demurrer statute's cross-reference to the joinder statute. If the legislature had intended to eliminate Oregon's pleading requirement, it would have deleted or limited that cross-reference.
The concurrence also relies on ORS 132.560(2). 364 Or. at 139, 430 P.3d at 1056 (Flynn, J., concurring). That section of the joinder statute was enacted as part of the 1989 amendment, and, as set forth above, it provides, "If two or more charging instruments are found in circumstances described in subsection (1)(b) of this section, the court may order them to be consolidated." ORS 132.560(2). The concurrence contends that the fact that a court can consolidate indictments indicates that the basis for joinder need not be alleged. That contention is flawed for two reasons. First, although ORS 132.560(2) was enacted in 1989, it did not change existing law. Courts have been able to consolidate indictments since the enactment of the first statute authorizing joinder of charges in 1933. Or. Laws 1933, ch. 40, § 1. And, as discussed above, both before and after that enactment, this court's cases have indicated that indictments must allege the basis for joinder of charges. Second, the fact that a court can consolidate indictments is not inconsistent with the requirement that an indictment that charges more than one offense must allege the basis for joining the charges. Requiring an indictment to allege the basis for joining offenses provides the same benefits as requiring court approval for the consolidation of indictments. Both requirements serve to provide notice of the state's basis for joinder and to bind the state to that basis.
In sum, Oregon has a long-established requirement that, if an indictment charges more than one offense, the indictment must allege the basis for joining the charges. The concurrence would eliminate that pleading requirement based on the 1989 amendment to the joinder statute. But the purpose of that amendment was to expand the bases of joinder, and nothing in the legislative history indicates that the legislature intended to change the pleading requirement. Therefore, in keeping with the text and context of the joinder statute and this court's prior cases applying it and the demurrer statute, we adhere to the pleading requirement.
*1050 B. Sufficiency of the Indictment and Harmless Error
The question then becomes whether the indictment in this case satisfied the pleading requirement. As described above, the indictment charged defendant with seven offenses: two counts of unlawfully obtaining public assistance, one count of unlawfully obtaining food stamps, one count of first-degree theft, and three counts of unsworn falsification. 364 Or. at 106 n. 1, 430 P.3d at 1038-39 n. 1. At trial, the state argued that, on its face, the indictment alleged that the charged offenses were of the same or similar character. On appeal, the Court of Appeals agreed that the charges of unlawfully obtaining public assistance, unlawfully obtaining food stamps, and unsworn falsification were of the same or similar character. Warren , 287 Or. App. at 163, 399 P.3d 1060. But the Court of Appeals did not resolve whether the first-degree theft charge was also of the same or similar character because it concluded that, even if the trial court had erred by disallowing defendant's demurrer, the error did not require reversal because the error was subject to Article VII (Amended), section 3,[10] which precludes reversal for harmless errors, and the error was harmless under the test established by the Court of Appeals in Poston I . Warren , 287 Or. App. at 163-64, 399 P.3d 1060.
On review, the parties dispute whether the trial court's disallowance of defendant's demurrer is subject to Article VII (Amended), section 3. Defendant contends, based on the text of the provision, that it does not apply because it applies only to errors committed "during the trial." The state disagrees and contends that the provision applies to errors committed before, during, and after trial. The state also argues that, even if Article VII (Amended) section 3, does not apply, several statutes preclude reversal of the trial court's judgment, including former ORS 138.230 (2015), repealed by Or. Laws 2017, ch. 529, § 26.[11] That statute required appellate courts to affirm a trial court's judgment despite certain trial court errors. It provided:
"After hearing the appeal, the court shall give judgment, without regard * * * to technical errors, defects or exceptions which do not affect the substantial rights of the parties."
Former ORS 138.230 (2015). For the reasons explained below, we conclude that the state's statutory argument based on former ORS 138.230 (2015) is dispositive.
Defendant acknowledges that former ORS 138.230 (2015) precludes the reversal of trial court judgments for errors that do not affect a defendant's substantial rights, but he contends that the trial court's disallowance of his demurrer affected his substantial rights. Defendant's argument on that point is narrow. He contends only that the disallowance was harmful because the state was allowed to proceed on an indictment that did not allege the basis for joinder. He asserts, "To force a defendant to answer a prosecution on an insufficient indictment is to prejudice a defendant's substantial right to be free of entanglement until presented with an indictment that passes muster."
Defendant does not dispute that, at the hearing on his demurrer, the state identified its basis for joining the charges: that they were "of the same or similar character." Unsurprisingly then, defendant does not contend that he did not receive notice of the state's basis for joinder, and he does not *1051 contend that the timing of the notice affected his defense. Nor does he contend that the state's identified basis for joinder was invalid. He argues only that the trial court's disallowance of his demurrer to the indictment affected his substantial rights because allowance of the demurrer would have been "dispositive as to that indictment."
Defendant's argument is based on the limited actions a trial court can take in response to a demurrer. ORS 135.660 provides, "Upon considering the demurrer, the court shall give judgment, either allowing or disallowing it, and an entry to that effect shall be made in the register." ORS 135.670(1) provides that, if the court allows the demurrer, the judgment is final, unless the court authorizes the case to be resubmitted or refiled, for the possible issuance of a new accusatory instrument. Specifically, it provides:
"If the demurrer is allowed, the judgment is final upon the accusatory instrument demurred to and is a bar to another action for the same crime unless the court , being of the opinion that the objection on which the demurrer is allowed may be avoided in a new accusatory instrument, allows the case to be resubmitted or refiled ."
(Emphases added.) Thus, when a defendant establishes a proper ground for a demurrer to an indictment, the defendant is entitled to entry of a judgment on the indictment, either with or without leave to resubmit the case to the grand jury for possible issuance of a new indictment. Based on that process, defendant argues that the trial court's disallowance of his demurrer deprived him of a judgment in his favor on the indictment.
Defendant's argument echoes Judge Edmonds' concurrence in State v. Marks , 286 Or. App. 775, 400 P.3d 951 (2017), in which he asserted that the Court of Appeals' harmless error analysis in Poston I was incorrect. Like defendant here, Judge Edmonds argued that Article VII, section 3, does not apply to erroneous disallowances of demurrers, but even if it does, the erroneous disallowance of a demurrer is not harmless because "allowance of the demurrer would have constituted a final disposition of the case." Marks , 286 Or. App. at 786, 400 P.3d 951 (Edmonds, J., concurring); see also State v. Eddy , 46 Or. 625, 630-31, 82 P. 707 (1905) (stating that the proper remedy for the erroneous disallowance of a demurrer to an indictment is to remand the case to the trial court to determine whether to allow the case to be resubmitted).
But not all erroneous rulings on demurrers require reversal. For example, in State v. Branton , 49 Or. 86, 87 P. 535 (1906), this court affirmed a trial court's judgment, despite the defendant's assertion that the trial court had erred by overruling his demurrer, which asserted that the charging instrument alleged two offenses. This court held that, even if the charging instrument alleged two offenses, the defendant "could not have been prejudiced" because one of the offenses was a lesser-included offense of the other. Id. at 89, 87 P. 535. Thus, Branton indicates that, in order to secure a reversal based on a trial court's ruling on a demurrer, a defendant must show more than that the ruling was error; the defendant must show that it was prejudicial.
This court's decision in State v. Ferrell , 315 Or. 213, 843 P.2d 939 (1992), points in the same direction. Ferrell involved thirteen cases, which were consolidated for review. In each case, the defendant was charged with at least one count of possession, delivery, or manufacture of a controlled substance. In addition to alleging the elements of the drug offenses, the indictments alleged that the offenses were committed as part of a "scheme or network." Under the sentencing guidelines in effect at the time, those allegations served to increase the crime-seriousness ratings of the underlying drug offenses and, thereby, increase the presumptive sentences for those offenses. The defendants demurred to the indictments, and the trial court disallowed the demurrers.[12]
*1052 Id. at 218-19, 843 P.2d 939. The defendants were found to have committed the offenses as part of a "scheme or network" and sentenced accordingly. Thereafter, the Court of Appeals held in State v. Moeller , 105 Or. App. 434, 441, 806 P.2d 130, rev. dismissed , 312 Or. 76, 815 P.2d 701 (1991), that the phrase "scheme or network" was unconstitutionally vague. Based on the Moeller holding, in each of the Ferrell cases, the Court of Appeals "reversed each defendant's conviction and remanded each case to the trial court with instructions to dismiss the indictment." Ferrell , 315 Or. at 219, 843 P.2d 939.
On review, this court reversed the Court of Appeals decision, holding that the defendants were not entitled to dismissals of the indictments. Id. This court explained that, because the defect in the indictments did not affect the validity of the defendants' convictions on the underlying drug offenses, the appropriate remedy was to affirm the defendants' convictions on those offenses and to remand for resentencing. Id. In so holding, this court noted that "the defective 'scheme or network' allegations [did] not vitiate the indictments in their entirety, nor did the allegation frustrate the constitutional objectives of an indictment." Id. at 221, 843 P.2d 939. And it distinguished the Ferrell cases from those in which the indictment charged an offense that was based on an unconstitutional statute or "fail[ed] to state a prosecutable offense." Id. at 221-22, 843 P.2d 939 (citing State v. Robertson , 293 Or. 402, 649 P.2d 569 (1982) (affirming trial court's allowance of a demurrer to an indictment that charged the defendant with violating an unconstitutionally overbroad statute); State v. Spencer , 289 Or. 225, 611 P.2d 1147 (1980) (affirming trial court's allowance of a demurrer to charge of violating an unconstitutionally vague statute); and State v. Blair , 287 Or. 519, 601 P.2d 766 (1979) (same) ). Thus, Ferrell indicates that a trial court's erroneous disallowance of a demurrer does not necessarily require reversal. Whether it does depends on whether the disallowance prejudiced the defendant.[13]
The indictment in this case can be analogized to the indictments in the Ferrell cases. If, as defendant argues, the indictment in this case was defective because it charged more than one offense without alleging the basis for joinder, then the indictment included improper additional allegations, specifically, six of the seven counts. But, under Ferrell , that alone would not require reversal if the inclusion of the additional allegations did not prejudice defendant.
Defendant asserts that the additional allegations prejudiced him, but he does not develop any argument that, for example, they "vitiate[d] the indictment" or "frustrate[d] the constitutional objectives of an indictment." See Ferrell , 315 Or. at 221, 843 P.2d 939. As we understand it, defendant's position is that he was prejudiced simply because his demurrer should have been allowed. But, as just explained, the fact that a demurrer should have been allowed is not sufficient in and of itself to require reversal.
Certainly, the disallowance of a demurrer based on improper joinder can be prejudicial. See id. at 222 n. 9, 843 P.2d 939 (suggesting that the inclusion of improper allegations in an indictment could require reversal if prejudicial evidence is admitted to support those allegations). The Court of Appeals recognized that in Poston I , when it held that the disallowance of a demurrer based on improper joinder is harmful if the improper joinder resulted in the admission of unfairly prejudicial evidence. 277 Or. App. at 146, 370 P.3d 904. But to the extent that Poston I 's harmless-error test is limited to whether unfairly prejudicial evidence was admitted, it is incomplete. As the primary proponent to the 1989 amendment of the joinder statute explained to the legislature, improper joinder can prejudice a defendant in several ways, including if the defendant would testify regarding some charges but not others, if the defendant's defenses to the charges could be viewed as inconsistent, if the evidence of one charge might improperly influence *1053 the jury's verdicts on other charges, or if the evidence could confuse the jury. Exhibit I, House Judiciary Crime and Corrections Subcommittee, HB 2251, Jan. 13, 1989 (written statement of Dale Penn). Therefore, if the disallowance of a demurrer allows charges to be tried together improperly and the joint trial affects the defense in any of those ways, the disallowance may be prejudicial. But defendant does not assert any such prejudice here, and, as mentioned, he does not develop any argument that any error vitiated the indictment or frustrated the constitutional purposes of an indictment. Therefore, based on the record and arguments in this case, we conclude that any error in the indictment did not affect defendant's "substantial rights," as required for reversal under former ORS 138.230 (2015).
III. CONCLUSION
Based on the text and context of the joinder statute, ORS 132.560, and in keeping with our prior cases, we hold that an indictment that charges more than one offense must allege the basis for joining the charges. But, even assuming that the indictment in this case failed to satisfy that requirement, we hold that any error in the indictment in this case did not affect defendant's substantial rights.
The decision of the Court of Appeals and the judgment of the circuit court are affirmed.
I join in the majority's conclusion that the judgment should be affirmed, and I share the majority's understanding that there are a variety of ways in which the joining of multiple charges can cause prejudice to a defendant. I disagree, however, with the majority's answer to the narrow question that I understand this case to present: whether the legislature intended to require that, when a charging instrument joins multiple offenses that meet the statutory test for joinder, the charging instrument must allege that the joined offenses meet the test for joinder.
Although courts do not look only to the words of a statute to discern the legislature's intent, we have repeatedly emphasized that "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." See e.g. , State v. Gaines , 346 Or. 160, 171, 206 P.3d 1042 (2009) (quotation marks and internal citation omitted). Here, in the only statute that limits the charging of multiple offenses, the legislature has specified that "[t]wo or more offenses may be charged in the same charging instrument" if they
"are alleged to have been committed by the same person or persons and are:
"(A) Of the same or similar character;
"(B) Based on the same act or transaction; or
"(C) Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan."
ORS 132.560(1)(b). The text of that provision does not require that offenses joined in a single indictment "are alleged to be " related in one of the three permitted ways; it requires that offenses joined in a single indictment "are" related in one of the three permitted ways.
The majority, nevertheless, concludes that the legislature intended to require that offenses joined in a single indictment "are alleged to be " related in one of the three permitted ways. The majority finds that legislative intent by assuming that the demurrer statute implicitly requires more than what the words of that statute express and by assuming that the legislature would have understood this court's prior decisions to mean more than what the court actually decided in those cases. State v. Warren , 364 Or. 105, 127, 430 P.3d at 1049-50 (2018). I am not persuaded that either the demurrer statute or prior case law so clearly requires an allegation of the basis for joinder that I am willing to accept that context as a better indication of legislative intent than the text of ORS 132.560, which indicates that the legislature did not require that charging instruments allege the basis for.
A. The Text of ORS 132.560(1)(b)
The version of ORS 132.560 that is at issue in this appeal is the product of significant *1054 amendments to Oregon's joinder law, which the legislature adopted in 1989 to expand the permissible bases for joinder. Or. Laws 1989, ch. 842, § 1. Although this court previously has considered challenges to joinder under earlier versions of ORS 132.560, we have not yet analyzed such a challenge under the current statute. The portion of the statute that is directly at issue in this case specifies that "[t]wo or more offenses may be charged in the same charging instrument * * * if the offenses charged are alleged to have been committed by the same person or persons and are: " "[o]f the same or similar character;" "[b]ased on the same act or transaction;" or "[b]ased on two or more acts or transactions connected together or constituting parts of a common scheme or plan." ORS 132.560(1)(b) (emphasis added).
Grammatically, the "and" in the emphasized phrase serves to identify two separate requirements for joining multiple charges in a single charging instrument: (1) the offenses "are alleged to have been committed by the same person or persons,"and (2) the offenses "are: [related in one of three specified ways]." ORS 132.560(1)(b). Although the majority is willing to read those words so that offenses also "are alleged" to be related in one of the specified ways, see Warren, 364 Or. at 114, 430 P.3d at 1042-43, it is more plausible that the legislature intentionally used a different verb to describe the relationship requirement because the legislature intended that requirement to serve a different purpose.
The first requirement for joinder-"same person or persons"-uses the verb form "are alleged," which is the passive voice of the transitive verb "to allege" and, thus, conveys that an unspecified actor must allege that the same person or persons have committed the joined offenses. See The Chicago Manual of Style § 5.112 (15th ed. 2003) ("The passive voice is always formed by joining an inflected form of to be * * * with the verb's past participle"). By contrast, the verb "are," which the legislature used to describe the relationship requirement, conveys that the specified circumstances must exist, without any suggestion that an allegation is required. Because the verb "are" is the present tense of the intransitive verb "to be," Webster's Third New Int'l Dictionary 189 (unabridged ed. 2002), and a term of common usage, we assume that "the dictionary definition reflects the meaning that the legislature would naturally have intended." Comcast Corp. v. Dept. of Rev. , 356 Or. 282, 296, 337 P.3d 768 (2014). As relevant here, the verb "to be" means to "have a (specified) qualification or characterization" or "to exist either absolutely or * * * under conditions specified[.]" Webster's at 189. Applying that meaning to ORS 132.560 (1)(b), the text of the legislature's second requirement for joinder conveys that the joined offenses must have one of the specified relationships to each other.
Even defendant acknowledges the significance that this court would typically attribute to the legislature's use of the verb "are," rather than "are alleged," to describe the requirement that joined offenses are related in one of the ways that permits joinder. See, e.g. , Northwest Natural Gas Co. v. City of Gresham , 359 Or. 309, 323, 374 P.3d 829 (2016) (court generally presumes that, when the legislature uses different terms in a statute or related statutes, "it likely intended them to have different meanings"). See also ORS 174.010 (in construing statutes, courts are charged "not to insert what has been omitted or omit what has been inserted"). There is no reason to depart from the ordinary presumption that the legislature likely used different words in the statute to express different meanings, because the legislature's use of different terms to describe the two requirements is consistent with the different functions that the two requirements serve. On the one hand, ORS 132.560(1)(b)'s requirement that joined offenses must be "alleged" to have been committed by the same person is consistent with the legislature's longstanding requirement that an indictment allege the person who is charged with the crime. See ORS 132.540(1) (specifying that an "indictment is sufficient if it can be understood therefrom that: (a) The defendant is named, or if the name of the defendant cannot be discovered, that the defendant is described by a fictitious name"); The Codes and General Laws of Oregon, ch. VIII, title I, § 1279(3) (Hill 1887). Moreover, if it turns out that the state cannot demonstrate that *1055 the person charged with the offenses actually committed them, the answer is an acquittal, not a conclusion that charges were improperly joined. Thus, the person or persons who committed the crimes is a pleading requirement and must be alleged.
On the other hand, the requirement that the joined charges "are" related retains a longstanding rule of this court that joined offenses actually are related in a way that permits joinder, regardless of whether the indictment alleges that relationship. In State v. Fitzgerald , 267 Or. 266, 516 P.2d 1280 (1973), this court considered an earlier version of the joinder statute, which permitted indictments to charge multiple offenses only if they were part of the "same act or transaction." We held that the trial court "erred in not requiring the state to elect [between the two joined offenses] when it became apparent that the two offenses were not part of the same transaction." Id. at 273, 516 P.2d 1280. In other words, an allegation that the joined offenses satisfied the test for proper joinder did not establish that the offenses were properly joined. Id. When the legislature later amended ORS 132.560, and required that joined charges "are" related in one of the ways that permits joinder, it expressed Fitzgerald 's holding that proper joinder is not determined by an allegation of proper joinder. Thus, the text of ORS 132.560(1)(b) indicates a legislative intent to require that joined offenses "are related," with no indication that the legislature intended to require that joined offenses also "are alleged" to be related.
B. Statutory Context
As the majority emphasizes, we also must construe ORS 132.560(1)(b) in the context of other, related statutes. Warren , 364 Or. at 112, 430 P.3d at 1041. When I consider that statutory context, I am persuaded that the legislature intentionally required only that joined offenses "are" related, and not that joined offenses also "are alleged to be" related.
The majority focuses on the demurrer statute, ORS 135.630, which lists " ORS 132.560" among the many statutes containing requirements that can be challenged through a demurrer. Warren , 364 Or. at 113-14, 430 P.3d at 1042-43. According to the majority, "the fact that the legislature has provided that a defendant can demur to an indictment on the ground that it does not comply with the joinder statute indicates that the legislature intended that a court would be able to determine, from the face of an indictment, whether the indictment complies with the joinder statute[.]" Warren , 364 Or. at 114, 430 P.3d at 1042. In my opinion, the text of ORS 135.630(2) does not hold up to the weight that the majority places upon it.
As an initial matter, I emphasize that the text of ORS 135.630(2) does not specify that the face of an indictment must show that it conforms to any particular requirement for indictments. Rather, the text authorizes a demurrer if the face of the indictment shows that it "does not substantially conform" to a listed requirement. ORS 135.630(2) (emphasis added). That negative phrasing produces a significantly different rule than the affirmative obligation that the majority attributes to the statute; it authorizes a demurrer when an indictment is facially insufficient when compared to the statutory indictment requirements-either because the indictment includes allegations that another statute prohibits or fails to include allegations that another statute requires. But the demurrer statute does not independently require any particular allegations to appear on the face of the indictment. Thus, whether or not the face of an indictment can demonstrate that it does not conform to a particular statutory requirement for indictments depends on whether the particular statutory requirement specifies that indictments must include, or must not include, an allegation. Because I am unable to conclude that the demurrer statute affirmatively requires an indictment to allege that it does conform to every pertinent statutory requirement, I am unable to conclude that the demurrer statute converts the requirement of ORS 132.560(1)(b), that joined offenses "are" related in one of the specified ways, into a requirement that joined offenses "are alleged to be" related in one of the specified ways.
In my opinion, more meaningful statutory context is supplied by another provision of *1056 ORS 132.560, which the legislature adopted at the same time that it adopted the current test for joining multiple charges in a single indictment. See Or. Laws 1989, ch. 842, § 1. That additional provision, ORS 132.560(2), specifies that a court has authority to join charges from separate indictments:
"If two or more indictments are found in circumstances described in paragraph (b) of subsection (1) of this section, the court may order them to be consolidated."[1]
Or. Laws 1989, ch. 842, § 1. That provision demonstrates a legislative intent that the circumstances sufficient to join multiple offenses will exist when no indictment alleges that the charged offenses are related to one another. It demonstrates that intent because there is no reason to expect a single-count indictment to allege that the charged offense is related to an offense charged in a different indictment, yet ORS 132.560(2) contains no suggestion that the state must add such an allegation to either indictment in order for the court to join the offenses for trial. In my opinion, the context of ORS 132.560(2) confirms the legislature's intent to permit joinder when offenses "are" related in one of the ways permitted under ORS 132.560(1)(b), regardless of whether the indictment alleges that the joined offenses share one of those relationships.
In short, the pertinent statutory context for ORS 132.560(1)(b) does not persuade me that the legislature intended to require that offenses joined in a single indictment "are alleged to be" properly joined. Indeed, such an affirmative demonstration is not even possible through the allegations of an indictment. As our cases illustrate, the fact that joined offenses are alleged to be related in a way that permits joinder does not mean that the offenses "are" properly joined. See, e.g. , Fitzgerald , 267 Or. at 273, 516 P.2d 1280 (although indictment alleged that joined offenses were part of the "same act or transaction," trial court required to enforce the joinder requirement "when it became apparent that the two offenses were not part of the same transaction") The allegations of an indictment cannot demonstrate whether charges are properly joined because whether "the state met the statutory requirements for joinder of charges" is a question of law. State v. Thompson , 328 Or. 248, 257, 971 P.2d 879 (1999). Thus, an allegation of proper joinder is of limited value because, regardless of what the indictment alleges, only a court determination based on the evidence can resolve whether offenses are properly joined. If it were necessary to find a reason why the legislature would require only that joined charges "are" related, without also requiring that the joined charges "are alleged to be" related, the limited value added by an allegation of proper joinder would be reason enough to explain the statutory omission.
C. Context of Prior Case Law
The majority also derives legislative intent from the general presumption that the legislature was aware of existing case law when it adopted the current version of ORS 132.560. Warren , 364 Or. at 125, 430 P.3d at 1048. According to the majority, cases dating back more than 100 years have said that indictments must allege the circumstances that comply with the joinder laws, and "[n]othing in the legislative history indicates that the legislature intended to alter Oregon's long-established pleading requirement." Warren , 364 Or. at 126, 430 P.3d at 1049. Although I agree that existing judicial decisions provide relevant context for the legislature's later statutory enactments, I am not persuaded that his court's earlier joinder cases so clearly required an allegation the basis for joinder that I am willing to accept those decisions as better evidence of the legislature's intent than the actual words that the legislature used in ORS 132.560 to express its intent.
The majority identifies approximately half a dozen cases in which this court considered whether the defendant was entitled to a demurrer *1057 on the grounds of improper joinder. Warren , 364 Or. at 116-18, 430 P.3d at 1043-45. In each case, the indictment contained some allegation that, if true, would satisfy the restrictions on joinder, and, in each case, this court held that the defendant was not entitled to a demurrer. Although I agree that statements in at least some of the decisions suggest that the defendant would have been entitled to a demurrer if the indictment had not contained a joinder allegation, the court was not asked to decide that question in any of the cases and did not need to decide that question in any of them.
As the majority writes, the 1905 case of State v. Clark , 46 Or. 140, 80 P. 101 (1905), is illustrative. Warren , 364 Or. at 116, 430 P.3d at 1043-44. In Clark , the indictment alleged that the defendants stole horses belonging to two different owners. At the time, the relevant statute required every indictment to charge "but one crime," and the defendant cited that requirement as grounds for a demurrer. Clark , 46 Or. at 141, 80 P. 101 (citing The Codes and Statutes of Oregon, title XVIII, § 1308 (Bellinger & Cotton 1901) ). This court held that the allegation of multiple owners did not demonstrate that the indictment violated the one-offense rule, because "the stealing of articles belonging to two or more persons at the same time and place constitutes but one offense[.]" Id. at 141-42, 80 P. 101. The court then added the statement that the majority quotes-that commission of the larcenies at the same time and place "must be alleged." Warren , 364 Or. at 117, 430 P.3d at 1044 (quoting Clark , 46 Or. at 142, 80 P. 101 ). The Clark court concluded that the allegations of the indictment at issue were "equivalent to an allegation" that the horses had been stolen at the same time and place, and the court affirmed the judgment. Id. at 142, 80 P. 101. However, the court was not asked to consider, and it was not necessary for the court to address, whether the indictment would have been sufficient even without those allegations.
We have emphasized that, when this court's construction of a statute is not necessary to the holding, it is "mere dictum " and has no "precedential effect" for purposes of future constructions of the statute. Halperin v. Pitts , 352 Or. 482, 492, 287 P.3d 1069 (2012). Thus, although Clark purports to describe a pleading requirement under the 1901 statute, I am hesitant to accept the majority's premise that the 1989 legislature so clearly would have understood Clark to establish a pleading requirement that we should presume the legislature intended to retain that pleading requirement when it adopted a new joinder provision, even though the text of that provision omits any suggestion that indictments must allege proper joinder. My hesitation to attribute such weight to Clark is compounded by the fact that the joinder restriction at issue in Clark had already been significantly altered when the 1933 legislature authorized the state to charge multiple crimes in the same indictment if the crimes were part of the "same act and transaction." Or. Laws 1933, ch. 40, § 1. It is not clear to me that anything this court said in Clark about alleging that the defendant's thefts satisfy the single-offense test would have the same significance once the legislature adopted a different test. More significantly, I am not persuaded that it would have been clear to the 1989 legislature that Clark required an allegation of the basis for joinder under the new statute.
This court's later decisions addressing the 1933 statute also avoided a holding that the joinder statute imposes an allegation requirement. For example, State v. Huennekens , 245 Or. 150, 420 P.2d 384 (1966), considered a defendant's challenge to his indictment under the 1933 version of ORS 132.560, which permitted the joining of multiple offenses that were "part of the same act and transaction." According to the majority, " Huennekens indicates that, in order for an indictment to survive a demurrer based on improper joinder, two requirements must be met: (1) the indictment must allege the basis for joinder and (2) that basis must be possible, given the offenses and facts alleged." Warren , 364 Or. at 118, 430 P.3d at 1045. However, the issue in Huennekens was the defendant's contention that the state needed to allege more than that the offenses were "part of the same act and transaction." 245 Or. at 154, 420 P.2d 384. This court rejected that contention and reversed the trial court's grant of a demurrer. In concluding that "the demurrer must *1058 be overruled," this court in Huennekens first explained that it was "apparent," given the nature of the charges, that they could "be part of the same transaction." Id . Ultimately, this court held: "Since it does not appear on the face of the indictment that the two crimes charged could not be a part of the same transaction, the demurrer must be overruled." Id . Thus, Huennekens does not have the import that the majority attributes to it; it does not hold that a multi-count indictment "must allege the basis for joinder." Warren, 364 Or. at 118. Rather, Huennekens "recognize[s] the obvious truth that if multiple crimes charged in one indictment could not have been part of the same act or transaction the indictment is defective." State v. Stuart , 250 Or. 303, 306, 442 P.2d 231 (1968).
After Huennekens , this court decided Fitzgerald , which, like Huennekens , involved a demurrer to an indictment that charged multiple offenses and alleged that the offenses were part of the "same transaction." 267 Or. at 273, 516 P.2d 1280. The "sole issue" on appeal was "whether the two offenses were properly joined for trial" at all, not whether the indictment needed the joinder allegation to survive a demurrer. Id . Indeed, the question of whether defendant's indictment would have been sufficient without the "same transaction" allegation was neither presented to the court nor analyzed by the court. Rather, the holding of Fitzgerald is that, despite an allegation that the charges were related in a way that permitted joinder, the trial court erred in allowing the charges to remain joined for trial "when it became apparent that the two offenses were not part of the same transaction." Id. at 273, 516 P.2d 1280.
It may be that the 1989 legislature understood this court's decisions to establish a pleading requirement when multiple charges are joined. And it may be that the absence of any discussion of that question suggests a legislative intent to retain such a requirement, combined with a lack of awareness that the words of the amended statute suggested a different intent. But I am not persuaded. The words that the legislature used to describe the requirements of proper joinder are the best evidence of whether it intended to require an allegation of proper joinder. When the strongest argument for finding a contrary intent is a few statements in prior decisions that-in my opinion-are dicta , I am unwilling to presume that the legislature intended to require an allegation that the text of the statute does not require.
D. Legislative History- Rule 8(a)
As the majority emphasizes, the legislative history contains no indication that legislators discussed whether the 1989 amendments to ORS 132.560 would require, or not require, an allegation that joined charges were properly joined. Warren , 364 Or. at 125-26, 430 P.3d at 1048-49. But the legislative history, nevertheless, provides some indication that the legislature intentionally did not require an allegation of proper joinder. The 1989 legislature intended to adopt for Oregon the more liberal joinder standard of Federal Rule of Criminal Procedure 8(a).[2] See , e.g. , Tape Recording, House Judiciary Committee, HB 2251, Jan. 20, 1989, Tape 3, Side A (statement of Rep Kevin Mannix) ("We are really talking about a bill which is going to put Oregon on parallel with the Federal Rules of Criminal Procedure. * * * I would also specifically like to state for the record that we are relying on interpretations to date of Federal Rule of Criminal Procedure 8(a)."); Tape Recording, House Judiciary *1059 Subcommittee on Crimes and Corrections, HB 2251, Jan. 13, 1989, Tape 2, Side A (statement of Rep Tom Mason) (explaining, "as we talked about earlier this would essentially adopt the federal rule on joinder"); House Judiciary Committee Staff Measure Summary, HB 2251, Jan. 14, 1989 (same).
In 1989, it was well established under federal law that, when a court determined that charges had been improperly joined under Federal Rule of Criminal Procedure, the remedy was severance of the charges, rather than dismissal of the indictment. See, e.g. , United States v. Bryan , 843 F.2d 1339, 1342 (11th Cir. 1988) (holding that a "motion for severance based on misjoinder under Rule 8 alleges an error in the indictment, and severance must be granted if the defendants were improperly joined") (quoting United States v. Williams , 711 F.2d 748, 750 (6th Cir. 1983) (emphasis in original) ); Kleven v. United States , 240 F.2d 270, 272 (8th Cir. 1957) (explaining that, "if the indictment had been subject to attack for misjoinder of offenses and defendants-which we think it was not-the proper remedy would have been a motion for a severance * * * rather than a motion to dismiss the indictment"); United States v. Goodman , 285 F.2d 378, 379 (5th Cir. 1961) (holding that, "whether there was a violation of Rule 8(a), or any other prejudicial joinder of offenses, the proper relief, especially under the circumstances of this case, is not to dismiss the entire indictment but to order an election or separate trial of counts"). See also John F. Decker, Joinder and Severance in Federal Criminal Cases: An Examination of Judicial Interpretation of the Federal Rules , 53 Notre Dame L. Rev. 147, 164 (1977) ("Whenever the requirements of Rule 8(a) (joinder of offenses) or Rule 8 (b) (joinder of defendants) are not met, misjoinder results. The remedy for misjoinder is simply a severance-separate trials of either defendants or offenses, depending upon the nature of the misjoinder.").
That legislative history is consistent with the intent that the legislature expressed through the words of ORS 132.560(1)(b) and of the related joinder provision, ORS 132.560(2). I cannot exclude the possibility that the 1989 legislature understood existing law to require an allegation of proper joinder, intended to retain existing law, and simply failed to note that the words of the proposed amendment could suggest a contrary intent. But legislative silence about a pleading requirement that the legislature may have gleaned from our cases is not enough to persuade me to look beyond the core principle of statutory construction-that the words that the legislature adopts are the best evidence of legislative intent. In the case of ORS 132.560, the words that the legislature used to describe the requirements for joinder persuade me that the legislature has not required an allegation in the indictment that joined offenses satisfy the statutory test for joinder. On that basis, I would affirm the trial court's judgment.
Balmer and Kistler, JJ. join this concurring opinion.

The indictment alleged:
"Count 1
"The defendant, on or between January 27, 2011 and December 31, 2011, * * * did unlawfully and knowingly obtain public assistance for the benefit of himself and others to which the said defendant was not entitled under Oregon Law by means of a false representation, to : his residence address.
"Count 2
"The defendant, on or between October 1, 2011 and December 31, 2011, * * * did unlawfully and knowingly obtain public assistance 4 for the benefit of himself and others to which the said defendant was entitled under Oregon Law by means of failing to immediately notify the Department of Human Services or the Oregon Health Authority of the receipt of income, which directly affected his eligibility for the assistance.
"Count 3
"The defendant, on or between January 27, 2011 and December 31, 2011, * * * did unlawfully and knowingly obtain supplemental nutritional assistance to which he was not entitled to receive under Oregon law.
"Count 4
"The defendant, on or between January 27, 2011 and December 31, 2011, * * * did unlawfully and knowingly commit theft of money, of the value of one thousand dollars or more, the property of the State of Oregon.
"Count 5
"The defendant, on or about July 22, 2011, * * * did unlawfully and knowingly make a false written statement, to-wit: statement of Oregon residence in DHS form 852, to a public servant in connection with an application for a benefit.
"Count 6
"The defendant, on or about July 22, 2011, * * * did unlawfully and knowingly make a false written statement, to-wit: statement of Oregon residence in DHS form 415F, to a public servant in connection with an application for a benefit.
"Count 7
"The defendant, on or about October 24, 2011, * * * did unlawfully and knowingly make a false written statement, to-wit: City of Beaverton Affidavit of Marriage or Domestic Partnership, to a public servant in connection with an application for a benefit."

In Poston I , the defendant was charged in a single indictment with multiple counts of promoting prostitution and identity theft. The defendant demurred to the indictment on the ground that it failed to allege the basis for joinder. The trial court disallowed the demurrer. At trial, the state presented evidence that the defendant had made calls from jail to encourage women to engage in prostitution and deposit the proceeds in his inmate account. The state also presented evidence that the defendant had used other inmates' identification numbers when making some of the calls.
On appeal, the Court of Appeals held that the trial court had erred by disallowing the demurrer. Id. at 144-45, 370 P.3d 904. It then held that error was harmless as to the promoting prostitution charges because, if those charges had been tried separately from the identity theft charges, evidence of the defendant's use of the other inmates' identification numbers "would have been admissible to prove [his] culpable mental state in the promoting prostitution trial-viz. , to show that, when asking the victims to place money in his inmate account, he knew that he was asking them to send him money that they had obtained through prostitution activity." Id. at 146, 370 P.3d 904. But the Court of Appeals held that the error was not harmless as to the identity theft charges, because it could not conclude that "evidence bearing on the promoting-prostitution counts would have been admissible at a trial in which defendant was charged only with identity theft." Id.

As discussed in the text below, the statutory limit on the number of offenses that an indictment can charge has been renumbered and amended over time, eventually becoming the joinder statute at issue in this case, ORS 132.560. General Laws of Oregon, Crim Code, ch. VIII, § 74, p. 454 (Deady 1845-1864), recompiled at General Laws of Oregon, Crim Code, title I, ch. VIII, § 74, p. 350 (Deady & Lane 1843-1872), recompiled at The Codes and General Laws of Oregon, Crim Code, title I, ch. VIII, § 1273 (Hill 1887), recompiled at The Codes and General Laws of Oregon, Crim Code, title I, ch. VIII, § 1273 (Hill 2d ed. 1892), recompiled at The Codes and Statutes of Oregon, title XVIII, ch. VIII, § 1308 (Bellinger & Cotton 1901), recompiled at Lord's Oregon Laws, title XVIII, ch. VII, § 1442 (1910), recompiled at Oregon Laws, title XVIII, ch. VII, § 1442 (1920), recompiled at Oregon Code, title XIII, ch. VII, § 13-708 (1930), amended by Or. Laws 1933, ch. 40, § 1, codified at OCLA § 26-711 (1940), recodified at ORS 132.560 (1953), amended by Or. Laws 1989, ch. 842, § 1, amended by Or. Laws 1993, ch. 278, § 1.

The demurrer statute has been renumbered and amended over time, and is now codified as ORS 135.630, the demurrer statute at issue in this case. General Laws of Oregon, Crim Code, title I, ch. XI, § 123, p. 461-62 (Deady 1845-1864), recompiled at General Laws of Oregon, Crim Code, title I, ch. XI, § 123, p. 356 (Deady & Lane 1843-1872), recompiled at The Codes and General Laws of Oregon, Crim Code, title I, ch. XI, § 1322 (Hill 1887), recompiled at The Codes and General Laws of Oregon, Crim Code, title I, ch. XI, § 1322 (Hill 2d ed. 1892), recompiled at The Codes and Statutes of Oregon, title XVIII, ch. IX, § 1357 (Bellinger & Cotton 1901), recompiled at Lord's Oregon Laws, title XVIII, ch. VIII, § 1491 (1910), recompiled at Oregon Laws, title XVIII, ch. VIII, § 1491 (1920), recompiled at Oregon Code, title XIII, ch. VIII, § 13-831 (1930), recompiled at ORS 135.630 (1953), amended by Or. Laws 1973, ch. 836, § 184.

We note that, although the demurrer statute has always used the terms "allow or disallow," this court, at times, has referred to the disallowance of a demurrer as the "overruling" of the demurrer.

Defendants may have to guess as to whether charges relate to the same or separate incidents. In this case, for example, it is not apparent from the indictment whether the first-degree theft counts relates to any other count or group of counts.

The state itself has an interest in identifying its basis for joinder so that a defendant can respond to it in a timely manner. As this court has explained, deciding whether to join charges "may place the prosecutor (and sometimes the defendant) in a dilemma." State v. Shields , 280 Or. 471, 473, 571 P.2d 892 (1977). On the one hand, if the prosecutor improperly joins charges, the joinder may result in reversal on appeal. On the other hand, if the prosecutor improperly omits charges, prosecution of the omitted charges may be barred by the protections against double jeopardy. Id. at 473-75, 571 P.2d 892. To protect against the ramifications of an erroneous choice about whether or not to join charges, it is in the state's interest to put a defendant in the position of having to elect between a single trial and separate trials. Boyd , 271 Or. at 569-70, 533 P.2d 795 (endorsing procedure, first suggested in State v. Bishop , 16 Or. App. 310, 518 P.2d 177 (1974), for prosecutors to force a defendant "to elect between serving her interest in having the case disposed of in a single adjudication and serving her interest in having separate trials so that the evidence of one charge is not interjected into the trial of the other charge"). " 'Such an election would usually either constitute a waiver of Brown rights to a single trial, or waiver of Fitzgerald rights to separate trials.' " Boyd , 271 Or. at 568, 533 P.2d 795 (quoting Bishop , 16 Or. App. at 314, 518 P.2d 177 (referencing State v. Brown , 262 Or. 442, 497 P.2d 1191 (1972) and State v. Fitzgerald , 267 Or. 266, 516 P.2d 1280 (1973) ) ). But for such a waiver to be valid, it must be intentionally and knowingly made. Shields , 280 Or. at 478, 571 P.2d 892. The defendant must be allowed the opportunity " 'to make an informed and calculated response.' " Id. (quoting with approval State v. Shields , 28 Or. App. 719, 724, 560 P.2d 690 (1977) (Schwab, J., dissenting) ). If, as the state and concurrence argue, the state is not required to allege the basis for its joinder of multiple charges in a single indictment, the defendant may not have the information necessary to make an informed decision about whether to object to joinder.

ORS 132.560 was amended again in 1993 and 1999. Or. Laws 1993, ch. 278, § 1; Or. Laws 1999, ch. 1040, § 17. The 1993 amendment changed the references to "indictment" to "charging instrument" and made other related changes. The 1999 amendment changed ORS 132.560(3) to require that the state or the defendant be "substantially prejudiced" in order for a trial court to order an election, separate trials, or other relief. Neither amendment is relevant to the issues in this case. The current version of the statute is set forth at the outset of this opinion. 364 Or. at 112-13, 430 P.3d at 1041-42.

See also Minutes, House Judiciary Committee, Crime and Corrections Subcommittee, HB 2251, Jan. 13, 1989, 7 (statement of Representative Mason); Exhibits H and I, House Judiciary Committee, Crime and Corrections Subcommittee, HB 2251, Jan. 13, 1989 (accompanying statement of Dale Penn); Minutes, House Judiciary Committee, Civil and Judicial Administration Subcommittee, HB 2251, Jan. 20, 1989, 3 (statement of Rep Mannix); Minutes, Senate Committee on Judiciary, HB 2251, June 7, 1989, 30 (statement of Sean Hoar); id . at 32 (statement of Dale Penn).

Article VII (Amended), section 3, provides, in pertinent part:
"If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial[.]"

Former ORS 138.230 (2015) was repealed as part of a revision of statutes governing appeals, Oregon Laws 2017, chapter 529, section 26. It was replaced by ORS 138.257, which references Article VII (Amended), section 3, and uses the harmless error standard for that provision, as articulated in Davis . Or. Laws 2017, ch. 529, § 15. Specifically, ORS 138.257(2) provides, "Subject to Article VII (Amended), section 3, Oregon Constitution, the appellate court shall not reverse, modify or vacate a trial court judgment or order if there is little likelihood that any error affected the outcome." ORS 138.257 took effect on January 1, 2018. The parties both rely on former ORS 138.230 (2015) in their arguments.

Although Ferrell does not expressly state the defendants demurred to the indictments, the briefs in twelve of the thirteen cases state that the defendants demurred to the indictment and assign error the trial courts' disallowances of the demurrers. In the thirteenth case, the defendant moved to strike the "common scheme or network" allegations.

See Ferrell , 315 Or. at 222 n. 9, 843 P.2d 939 (noting that only one of the thirteen Ferrell defendants "even suggested that the jury heard substantive evidence regarding the 'scheme or network' allegation that would have been inadmissible had she been charged with a 'simple' drug offense," but that that defendant had not "identified specifically what that evidence was or how its admission affected the validity of her underlying drug conviction").

The majority emphasizes that former ORS 132.560 also had permitted courts to order that separately indicted counts be consolidated. Warren , 364 Or. at 123, 430 P.3d at 1047. But the 1989 amendments added an entirely separate provision, elaborating on and emphasizing the test for joining separately indicted offenses. A minor amendment in 1993 replaced the term "indictment" with the term "charging instrument" that appears in the current statute. Or. Laws 1993, ch. 278, § 1.

Fed R Cr P 8(a) (1989) provided:
"(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
There is no basis to conclude that the legislature also intended to adopt Rule 8(b), which addresses joinder of multiple defendants, and which expressly requires an allegation of the basis for joinder. Although ORS 132.560(1)(b) refers to joining charges "against any person or persons," that phrasing was part of the statute before the legislature amended the statute to essentially mimic Federal Rule of Criminal Procedure 8(a).Nothing in the legislative history suggests that, in retaining the reference to charges against "persons," the legislature intended to follow Rule 8(b) or the cases construing it.