Submitted March 30, 2022, reversed and remanded May 17, petition for review denied August 31, 2023 (371 Or 332)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RANDALL TODD BROWN,
*Defendant-Appellant.*

Washington County Circuit Court
18CR75115, 18CR85116;
A171078 (Control), A171079

531 P3d 178

Defendant appealed a judgment of conviction for 13 offenses, challenging the consolidation of two indictments under ORS 136.560(2). The first indictment arose out of a traffic accident and charged four offenses directly related to that accident—driving under the influence of intoxicants, reckless driving, assault in the fourth degree, and criminal mischief in the second degree—as well as four additional offenses discovered in the resulting investigation—unlawful use of a vehicle (UUV), possession of methamphetamine, felon in possession of a firearm, and identity theft. The second indictment arose out of a separate arrest several months later, and charged UUV, possession of methamphetamine, felon in possession of a restricted weapon, and delivery of methamphetamine. *Held*: The indictments were misjoined because the offenses directly related to the traffic accident in the first indictment and the offenses in the second indictment did not satisfy any of the statutory bases for joinder in ORS 135.560(1)(b)(A) to (C). Although joinder of the additional offenses in the first indictment with the offenses in the second indictment may have been proper, consolidation was improper because there must be a basis for joining all of the indicted offenses, not just some of them.

Reversed and remanded.

Theodore E. Sims, Judge.

Frances J. Gray filed the briefs for appellant. Randall Todd Brown filed supplemental briefs *pro se.*

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Kamins, Judge, and Joyce, Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Defendant appeals a judgment of conviction for 13 offenses, described below, for which he was charged in two separate indictments that were later consolidated for trial. Defendant assigns 21 errors, eight of them in a supplemental brief *pro se*. Because it is dispositive, we focus on defendant's fifth assignment of error, which challenges the joinder of the two charging instruments. We reverse and remand.

## I.   BACKGROUND

We begin by briefly describing the circumstances of each indictment, as well as the material procedural facts. The first indictment arose out of a traffic accident that occurred on September 1, 2018, in which defendant drove into the opposite lane and collided with an oncoming vehicle, injuring its two occupants (the September incident). Defendant was taken to the hospital, where tests revealed acute methamphetamine intoxication. In the subsequent investigation, police discovered that the car defendant was driving had been stolen. Inside the car, police also found two firearms, stolen personal identification, and a glass pipe with residue that tested positive for methamphetamine. Defendant had previously been convicted of a felony. As a result, defendant was indicted for nine offenses: felon in possession of a firearm, ORS 166.270(1) (Count 1); unauthorized use of a vehicle (UUV), ORS 164.135 (Count 2); identity theft, ORS 165.800 (Count 3); driving under the influence of intoxicants (DUII), ORS 813.010 (Count 4); unlawful possession of methamphetamine, ORS 475.894 (Count 5); reckless driving, ORS 811.140 (Count 6); two counts of assault in the fourth degree, ORS 163.160 (Counts 7 and 8); and criminal mischief in the second degree, ORS 164.354 (Count 9).[1]

The second indictment arose out of a separate arrest that occurred on December 21, 2018 (the December incident). A police officer stopped defendant for a traffic violation and discovered that the vehicle defendant was driving had been stolen. During a search incident to arrest, police

---

[1] ORS 164.135, ORS 165.800, ORS 813.010, ORS 475.894, and ORS 163.160 have all been amended since September 1, 2018; however, because none of those amendments affect our analysis, in this opinion, we refer to the current versions of those statutes.

found in defendant's pockets 18 grams of methamphetamine
and a knife that opened with centrifugal force. As a result,
defendant was indicted for unlawful delivery of metham-
phetamine, ORS 475.890 (Count 1); unlawful possession
of methamphetamine, ORS 475.894 (Count 2); UUV, ORS
164.135 (Count 3); and felon in possession of a restricted
weapon, ORS 166.270(2) (Count 4). In sum, the two indict-
ments charged the following offenses:

| The September Incident | The December Incident |
| --- | --- |
| UUV | UUV |
| Possession of methamphetamine | Possession of methamphetamine |
| Felon in possession of a firearm | Felon in possession of a restricted weapon |
| Identity theft | Delivery of methamphetamine |
| DUII | |
| Reckless driving | |
| Assault in the fourth degree (2 counts) | |
| Criminal mischief in the second degree | |

The state filed a motion to consolidate the two cases,
which the trial court granted the same day.[2] Defendant sub-
sequently filed three motions to sever—two challenging the
joinder of offenses within each indictment and one chal-
lenging the joinder of the two indictments. In the motion
challenging the joinder of the two indictments, defendant
asserted that many of the charges were not of the same or
similar character and were not sufficiently connected to be
part of a common scheme or plan. The trial court denied
those motions, and the case proceeded to a consolidated
trial. The jury rendered guilty verdicts on all counts.

---

[2] Defendant did not have an opportunity to oppose consolidation until filing
the motion to sever, a practice that, at a minimum, hampers appellate review.

## II.   DISCUSSION

ORS 132.560 governs the joinder and severance of criminal offenses. ORS 132.560(1) "creates a general rule that a charging instrument must not charge more than one offense." *State v. Warren*, 364 Or 105, 113, 430 P3d 1036 (2018). However, ORS 132.560(1)(b)(A) to (C) identifies three circumstances in which multiple offenses may be charged in a single indictment or other charging instrument, as discussed further below. "[I]f an indictment charges more than one offense, it must allege the basis for joining the charges." *Warren*, 364 Or at 122. The defendant may challenge the joinder of charges by demurrer, in which case the state must establish that the charging instrument on its face complies with the pleading requirements for joinder. *See* ORS 135.630(2); *Warren*, 364 Or at 122 ("The issue at the demurrer stage is whether the allegations in the indictment are sufficient to support joinder, and the demurrer must be decided based solely on the face of the indictment."). Or, the defendant may challenge the joinder of charges by moving to sever, arguing that the joinder requirements are not met, ORS 132.560(1), or that the defendant is substantially prejudiced by joinder, ORS 132.560(3).

Charges also may be joined through the consolidation of two or more charging instruments. ORS 132.560(2). If the state moves to consolidate two or more charging instruments, the trial court must "determine whether the charges meet any of the independently sufficient bases for joinder listed in ORS 132.560(1)(b)(A) to (C)." *State v. Dewhitt*, 276 Or App 373, 380, 368 P3d 27, *rev den*, 369 Or 667 (2016). The defendant may oppose consolidation, if given the opportunity, or may move to sever once the charging instruments are consolidated. As with joinder in a single charging instrument, the defendant may argue that joinder by consolidation of charging instruments is improper because the joinder requirements are not met, ORS 132.560(1), or that the defendant is substantially prejudiced by the joinder, ORS 132.560(3).

Where multiple charges are properly joined under ORS 132.560(1), "a defendant seeking severance under ORS 132.560(3) must identify a case-specific theory of substantial

prejudice that is more than the prejudice that is inherent whenever joined charges allow the jury to hear that the defendant may have committed other bad acts." *State v. Delaney*, 370 Or 554, 556, 522 P3d 855 (2022). Such theories "include but are not limited to: (1) that the jury will confuse or cumulate the evidence; (2) that the defendant may be confounded in presenting conflicting defenses; and (3) that the jury will conclude that the defendant is guilty of one crime and therefore guilty of others." *Id.* at 575. If it appears that the defendant is substantially prejudiced by the joinder, the court may order separate trials of counts or "provide whatever other relief justice requires." ORS 132.560(3).

Joinder of criminal offenses implicates competing interests, and ORS 132.560 reflects a balancing of those interests. On one hand, an accused's right to a fair trial means the exclusion of unfairly prejudicial evidence of other crimes. *See Warren*, 364 Or at 114-15 ("Just as the admission of evidence of other crimes can be unfairly prejudicial when a defendant is charged with a single crime, the joinder of charges for multiple crimes can be unfairly prejudicial."). On the other hand, "[t]he purpose of the joinder statute is to reduce the occurrence of multiple trials for multiple related crimes committed by a single defendant." *State v. Smith*, 308 Or App 639, 644, 481 P3d 363 (2021) (internal quotation marks omitted). Thus, judicial efficiency counsels in favor of more permissive joinder. *See Dewhitt*, 276 Or App at 382 (noting that the legislature expanded the bases for joinder in 1989 "to promote the goals of trial economy and judicial efficiency"). ORS 132.560 balances those interests by allowing for joinder where the charges are related in one or more of the ways outlined in subsection (1)(b)(A) to (C).

"We review a trial court's determination that the state met the statutory requirements for joinder of charges for legal error. We also review a trial court's determination whether the facts stated in a defendant's motion to sever to show the existence of prejudice for legal error." *State v. Keith*, 294 Or App 265, 268, 431 P3d 94 (2018), *adh'd to as modified on recons*, 299 Or App 355, 450 P3d 1034 (2019) (citation and brackets omitted). "We limit our review to the state of the record at the time of the court's ruling on the

motion to sever." *State v. Buyes*, 280 Or App 564, 565, 382 P3d 562 (2016) (citation omitted).

Here, the state's motion to consolidate argued that the two indictments were joinable on the bases of "same or similar character" and "common scheme or plan." ORS 132.560(1)(b).[3] The state relied on the fact that defendant committed some of the same or similar crimes in each incident—UUV, felon in possession, and possession of methamphetamine. In an attached affidavit, the state added to the allegations in the indictment that in both cases, defendant was driving "an older model from a Japanese manufacturer (Honda Accord and Subaru Impreza) with easily defeatable ignition systems" and that investigators discovered text messages on defendant's phone, which the state intended to offer as evidence that defendant knew both vehicles were stolen and knowingly possessed a firearm in the September incident. The state reprises those arguments on appeal. Defendant, on the other hand, points out that there were also offenses in each indictment that did not appear in the other indictment—the September incident (unlike the December incident) also involved identity theft, DUII, reckless driving, assault, and criminal mischief, while the December incident (unlike the September incident) also involved the delivery of methamphetamine.

---

[3] ORS 132.560 provides, in relevant part:

"(1) A charging instrument must charge but one offense, and in one form only, except that:

"* * * * *

"(b) Two or more offenses may be charged in the same charging instrument in a separate count for each offense if the offenses charged are alleged to have been committed by the same person or persons and are:

"(A) Of the same or similar character;

"(B) Based on the same act or transaction; or

"(C) Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

"(2) If two or more charging instruments are found in circumstances described in subsection (1)(b) of this section, the court may order them to be consolidated.

"(3) If it appears, upon motion, that the state or defendant is substantially prejudiced by a joinder of offenses under subsection (1) or (2) of this section, the court may order an election or separate trials of counts or provide whatever other relief justice requires."

As noted, the indictments were consolidated under both the "same or similar character" exception and the "common scheme or plan" exception. Beginning with "same or similar character," our approach has been to conduct a "comprehensive review," considering "factors such as the temporal proximity of the acts, similarities in the elements of the offenses, whether there will be similar evidence or evidentiary overlap, and whether the charges involve the same or similar victims, locations, intent, modus operandi, or acts." *State v. Garrett*, 300 Or App 671, 682, 684, 455 P3d 979 (2019), *rev den*, 366 Or 827 (2020).

We have previously applied that analysis to conclude that sodomy and sexual abuse of a child were not similar to encouraging child sex abuse because the elements of each crime were different, they were alleged to have been committed several months apart, the victims and modes of operation were different, and there was no evidentiary overlap. *Id.* at 685-90 (Police discovered child pornography on the defendant's thumb drive while investigating him for abusing his niece.). We have likewise determined that public indecency charges were not similar to rape because the elements of each offense were different and the indictment did not allege that they were committed at the same time or place, nor that there was any evidentiary overlap. *State v. Gialloreto*, 301 Or App 585, 593-95, 457 P3d 1105 (2019), *rev den*, 366 Or 827 (2020).

Here, we conclude that some of the offenses in the two indictments were of the same or similar character, but others were not. The offenses which appeared in both indictments—UUV and possession of methamphetamine—were of the same or similar character because the elements of each offense are identical and there were no material differences in defendant's intent or acts. The UUV offenses are particularly so because the state alleged that the cars were stolen using a similar modus operandi—"easily defeatable ignition systems"—and that there was evidentiary overlap in the form of text messages. We reach the same conclusion with respect to the felon in possession offenses because the only difference between the two offenses was that in the September incident the possessed item was a firearm, while

in the December incident it was a "restricted weapon," that is, a knife that opened with centrifugal force. *Compare* ORS 166.270(1) *with* ORS 166.270(2). Regarding both charged offenses, defendant had in his possession a weapon that was prohibited to him because of his prior conviction.

We cannot conclude the same, however, as to the remaining offenses—in the September incident, identity theft, DUII, reckless driving, fourth-degree assault, and second-degree criminal mischief, and in the December incident, delivery of methamphetamine. Beginning with the offenses' elements, the crimes of fourth-degree assault and second-degree criminal mischief charged in the September incident have no material elements in common with any of the offenses in the December incident. The only possible similar crime in the December incident to the September incident's DUII and reckless driving is UUV, because the crimes all involve the operation of a vehicle; however, DUII requires that the person be under the influence of a controlled substance and reckless driving requires that the person drive in a manner that endangers the safety of persons or property, while UUV requires that the vehicle belong to another person who did not consent to its use. *Compare* ORS 813.010 *and* ORS 811.140 *with* ORS 164.135. And although identify theft (September incident) and UUV (the most similar offense in the December incident) both involve the wrongful possession of another's property, for identity theft the property must be personal identification and possessed with the intent to deceive or defraud, while for UUV the property must be a vehicle. *Compare* ORS 165.800 *with* ORS 164.135. Finally, at the risk of stating the obvious, although possession of methamphetamine (September incident) and delivery of methamphetamine (December incident) both involve methamphetamine, the former merely requires that defendant possessed it while the latter requires that he delivered it. *Compare* ORS 475.894 *with* ORS 475.890.

As for the factors other than a comparison of the offense's elements, the offenses in each incident were alleged to have been committed several months apart. They also were not alleged to have been committed in the same location, other than being in the same county. *See Garrett*, 300

Or App at 688 (noting that "the similar, but general, location of the alleged acts, Lane County, does not assist us a great deal in our analysis"). Nor was there any alleged evidentiary overlap between the incidents.

In sum, we conclude that UUV, possession of methamphetamine, and felon in possession in the September incident are of the same or similar character as UUV, possession of methamphetamine, and felon in possession in the December incident. However, identity theft, DUII, reckless driving, fourth-degree assault, and second-degree criminal mischief in the September incident are not of the same or similar character as any of the offenses in the December incident, and the delivery of methamphetamine in the December incident is not of the same or similar character as any of the offenses in the September incident.

Turning to the other basis for joinder in this case, offenses are "connected together or constituting parts of a common scheme or plan" when they are "logically related, and there is a large area of overlapping proof between them." *Dewhitt*, 276 Or App at 383 (citation and quotation marks omitted). In *Smith*, the defendant committed criminal mischief and harassment against his girlfriend's son, then, about a month later, kidnapped, strangled, and assaulted his girlfriend. 308 Or App at 641-42. We concluded that the offenses were not connected together or constituting parts of a common scheme or plan because there were no interlocking facts suggesting a logical relationship between the two incidents, and any overlapping evidence was slight. *Id.* at 645-46. Similarly, in *Keith*, the defendant was jointly tried for several acts of domestic violence as well as possession of methamphetamine that the police found when they arrested him the day after the last domestic violence incident. 294 Or App at 267-68. We concluded that the methamphetamine charge was insufficiently connected to the other offenses because it was not the result of a perpetuation of the other criminal activity, nor was there any overlapping proof. *Id.* at 270-71.

On the other hand, in *State v. Taylor*, 364 Or 364, 374, 434 P3d 331 (2019), the Supreme Court concluded that offenses were connected together or constituting parts of

a common scheme or plan where the defendant planned and committed two similar bank robberies and also committed kidnapping and murder in furtherance of the second robbery. In *State v. Strouse*, 276 Or App 392, 402, 366 P3d 1185, *rev den*, 360 Or 236 (2016), unlawful possession of marijuana was properly joined with firearm theft offenses because evidence of both crimes was discovered in the same search, and that search precipitated other criminal conduct also charged in the same indictment. Likewise, in *Dewhitt*, charges of harassment and possession of marijuana could be joined because the criminal conduct occurred and was investigated concurrently, so they were linked temporally and spatially and had substantial overlapping proof. 276 Or App at 385-86.

Here, the state's theory of "common scheme or plan," as we understand it, was that during both incidents, defendant was engaged in the business of buying and selling contraband such as stolen vehicles, drugs, weapons, and personal identification. Assuming, for the sake of discussion, that that theory is precise enough to satisfy the statute, joinder of felon in possession, UUV, identify theft, and possession of methamphetamine in the September incident with the offenses in the December incident—delivery of methamphetamine, possession of methamphetamine, UUV, and felon in possession—would be proper. When viewed as parts of a scheme to trade contraband, those offenses are logically related, and the ones in the December incident could be considered a perpetuation of the same criminal activity as in the September incident. The state also alleged that there was overlapping evidence in the form of text messages.

That, however, still does not account for joining the offenses in the December incident with those in the September incident related to the car crash—DUII, reckless driving, fourth-degree assault, and second-degree criminal mischief. As in *Smith* and *Keith*, there are no interlocking facts suggesting a logical relationship between the crash and contraband crimes committed several months later, nor is there any overlapping proof. Unlike in *Taylor*, the state does not argue that the car crash was part of defendant's scheme to trade contraband, rather, the allegations show

that he just so happened to be in possession of contraband when he caused the crash. Nor does the state argue that the car crash somehow precipitated the later contraband crimes, or that the later contraband crimes were the result of perpetuation of defendant's dangerous driving. All in all, we fail to see how accidentally causing a car crash can be seen as part of a scheme or plan to trade contraband several months later.

In sum, we assume without deciding that UUV, possession of methamphetamine, felon in possession, and identity theft in the September incident are part of a common scheme or plan as UUV, possession of methamphetamine, felon in possession, and delivery of methamphetamine in the December incident, but conclude that the car crash offenses in the September incident—DUII, reckless driving, fourth-degree assault, and second-degree criminal mischief—are not.

The state appears to argue that because some offenses in the September incident were properly joined with the offenses in the December incident, then any other offenses in the September incident (*i.e.*, the car crash offenses) were also properly joined. In essence, the state argues that it can make a "daisy chain" of offenses—if offense A is joinable with offense B, and offense B is joinable with offense C, then all three offenses may be joined, even if joinder of only offenses A and C would not be proper. We disagree.

Such chaining of offenses is not consistent with prior caselaw holding that the state must allege the basis for joinder in the indictment. In *State v. Poston*, 277 Or App 137, 139, 370 P3d 904 (2016), *adh'd to on recons*, 285 Or App 750, 399 P3d 488, *rev den*, 361 Or 886 (2017), the defendant was charged with six counts of promoting prostitution and 26 counts of identity theft in an indictment that did not allege any bases for joinder. We reasoned that "the state permissibly could charge all of the promoting-prostitution counts in a single indictment and, in turn, all of the identity-theft counts in a single indictment" but "[w]hat it could not do is join the promoting-prostitution counts with the identity-theft counts without alleging in the indictment the basis for the joinder

of those two groups of counts in a single indictment." *Id.* at 145 n 4; *see also Warren*, 364 Or at 122 (holding that "if an indictment charges more than one offense, it must allege the basis for joining the charges"). Underlying both cases is an assumption that there must be a basis for joining all of the indicted offenses, not just some of them. Here, the state does not even argue that there is a statutory basis for joining the car crash offenses in the September incident with the offenses in the December incident.

At the end of the day, allowing for daisy chains of offenses would open the door to the joinder of an unlimited number of offenses that "may somehow be tangentially related, but, for all practical purposes, are factually alien to each other." *Dewhitt*, 276 Or App at 384 (internal quotation marks omitted). Joinder in such circumstances would elevate concerns of judicial efficiency too far above "protect[ing] defendants from the prejudice that can result from trying multiple, unrelated offenses at one time." *Warren*, 364 Or at 114-15. As a result, in this case, the car crash offenses in the September incident were misjoined with the offenses in the December incident.

The next question is whether that error was harmless, *i.e.*, whether there is little likelihood that it affected the jury's verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003).[4] In making that determination, we consider whether the misjoinder led to the admission of evidence that would not have been admissible but for the joinder and, if so, whether that evidence affected the verdict. *Smith*, 308 Or App at 647. That task can be difficult because, "by relying on multitiered assumptions about hypothetical trials, we encounter increasing difficulty in determining the likely effect of evidence and, accordingly, in concluding whether, as a matter of law, there is little likelihood that the evidence would have affected an imagined verdict." *State v. Walsh*,

---

[4] The harmless error standard on appellate review—whether there is little likelihood that misjoinder affected the verdict—is less demanding than the substantial prejudice standard for a motion to sever in the trial court, which requires the defendant to "identify a case-specific theory of substantial prejudice that is more than the prejudice that is inherent whenever joined charges allow the jury to hear that the defendant may have committed other bad acts." *Delaney*, 370 Or at 556.

288 Or App 331, 337, 406 P3d 152 (2017), *rev den*, 364 Or 680 (2019).

Here, we cannot conclude, nor does the state argue, that the error was harmless with respect to either case because some prejudicial evidence would not have been cross-admissible, and in these circumstances, may have affected the outcome. In particular, evidence of the drug charges in the December incident—a substantial quantity of methamphetamine—would not have been admitted in a trial solely about the offenses in the September incident, nor would evidence of the car crash have been admitted in a trial solely about the offenses in the December incident. *See Warren*, 364 Or at 115 ("[E]vidence of other crimes usually is very prejudicial to the defendant because such a fact is often interpreted by the jury as evidence of bad criminal character." (Citing *State v. Brown*, 299 Or 143, 151, 699 P2d 1122 (1985).)). Because there is more than a little likelihood that those pieces of evidence affected the jury's verdict on the other charges, misjoinder was not harmless.

Defendant also assigns error to the joinder of offenses within each indictment. We conclude that the offenses in each indictment were properly joined as "of the same or similar character" because they were linked by temporal proximity, location, and evidentiary overlap. We further conclude that they were properly joined as "connected together or constituting parts of a common scheme or plan" because the criminal conduct in each incident occurred and was investigated concurrently, so the offenses were linked temporally and spatially and had substantial overlapping proof. *Dewhitt*, 276 Or App at 385-86.[5]

---

[5] Our disposition obviates the need to address the remaining assignments of error, which challenge the acceptance of nonunanimous jury verdicts on two of the counts. We reject defendant's first supplemental assignment of error because defendant was not denied a "speedy trial." ORS 136.290. We reject defendant's second supplemental assignment of error, which challenges the denial of his motion to suppress the fruits of his December arrest, because we conclude that the arresting officer had probable cause to suspect that defendant committed UUV. We reject defendant's third supplemental assignment of error challenging the admission of medical records because those records were prepared for treatment purposes. *Melendez-Diaz v. Massachusetts*, 557 US 305, 312 n 2, 129 S Ct 2527, 174 L Ed 2d 314 (2009). We reject defendant's arguments in his fourth, fifth, and sixth supplemental assignments of error because they were not preserved in the trial court and do not involve "plain error." *See State v. Brown*, 310 Or

Reversed and remanded.

---

347, 355, 800 P2d 259 (1990) (an error is apparent on the face of the record if the legal point is obvious and not reasonably in dispute, and if the reviewing court need not look beyond the record or choose from competing inferences to find the error). We reject defendant's seventh supplemental assignment of error, which challenges the trial court's denial of his motion for judgment of acquittal, because the evidence was legally sufficient. We reject defendant's eighth supplemental assignment of error because the trial court did not err in finding "good cause" to extend the restitution deadline. ORS 137.106(1)(a) (2019), *amended by* Or Laws 2022, ch 57, § 1.